In the Matter of PETE-LOR, INC., Respondent, *v.* SID HABER et al., Constituting the Board of Trustees of the Incorporated Village of Cedarhurst, Appellants, et al., Respondents.

Second Department, April 24, 1972.

*Sydney A. Hellenbrand* for appellants.

*Gehrig, Ritter, Coffey, McHale & McBride (John F. Coffey* of counsel), for respondent.

SHAPIRO, Acting P. J.   The Board of Trustees of the Village of Cedarhurst appeal from so much of an order of the Special Term, Nassau County, as (1) annulled their determination that the petitioner's use of its building was not a legal nonconforming one and (2) adjudged that such use was a legal nonconforming one.

The subject premises were constructed late in 1954 or in 1955 as an additional building to a gasoline service station.   The station had been in existence at the southwest corner of Pros-

pect Street and Central Avenue in the Village of Cedarhurst for many years. In 1950 an amendment to the local zoning ordinance prohibited automobile filling or service stations, or enlargements thereto, having a frontage on Central Avenue. In 1954 the owners of the gas station applied for a building permit for this additional building, to be used for "gas station and kindred facilities." The permit for the building, which was to contain three bays, was issued in April, 1954.

By late 1955, two of the three bays were being used as an auto body paint and repair shop. The third bay was used for gasoline station purposes. The pivotal point in the case is whether the use of two of the three bays in the accessory building for auto repair purposes prior to 1957 was valid, thereby conferring upon the petitioner the right to continue such use as a valid nonconforming one.

Paragraph (w) of subdivision 1 of section 50 of the zoning ordinance in existence at the time in question authorized a "public garage" use. Such use was defined in subdivision (p) of section 10 of the ordinance as "a building, other than a private garage, one or more stories in height, used for storage or *repair* of automobiles" (emphasis supplied). Hence, it appears that the property was validly used as an auto body and paint shop. Such use was not outlawed until 1957.

The building permit was issued upon an application for accessory use to an automobile service station and for "kindred facilities". As noted, use of the accessory building for service station purposes was invalid under the zoning ordinance. However, notwithstanding such invalidity, two thirds of the property was used lawfully. This is *not* a case in which a party seeks to justify an otherwise improper permit, but rather one in which the permit erroneously permitted an invalid use and in which two of the three bays in the building were nevertheless put to a use consonant with the applicable zoning ordinance.

Further, the building permit was not itself wholly invalid. It could not, of course, confer a valid right to use any of the bays for automobile service station purposes. Two of the three bays, however, were used validly pursuant to the permit, which authorized a use for facilities kindred to a gas station. A "public garage" should be regarded as such a use. Hence, two of the bays in the accessory building were lawfully used pursuant to the zoning ordinance and pursuant to a building permit which was valid, at least insofar as those two bays were concerned.

The certificate of occupancy, issued in April, 1955, provided: "Special applications & approval req'd for heavy body & fender work, spray painting and any other use not incidental or acces-

sory to a gasoline service station.'' This requirement was apparently imposed in the mistaken belief that gasoline service stations were permitted uses, but that auto body shops were not. In fact the opposite was true. The failure to obtain the required approval pursuant to the requirement of the certificate of occupancy (which approval was not necessary under the statute) does not serve to render invalid the otherwise lawful use so as to undo a right based upon a prior conforming use (see Anderson, Zoning Law and Practice in New York State, § 6.10).

Our finding of a lawful nonconforming use as to bays two and three will not sterilize the first bay. The various bays on the premises have been used independently in the past. However, in view of all of the circumstances, we are of the opinion that, if applied for, a variance should be granted to legitimatize use of the remaining bay.

Hence, the judgment should be modified, on the law, by (1) limiting the annulment therein, of the appellants' determination, to the two bays used for automobile repair purposes prior to the 1957 amendment to the Zoning Ordinance of the Village of Cedarhurst; (2) likewise limiting to those two bays the adjudication in the judgment granting the lawful nonconforming use status; and (3) adding a provision thereto dismissing the proceeding as to the appellants insofar as it is with respect to the bay which was used for gas station purpose; and, as modified, the judgment should be affirmed insofar as appealed from, without costs.

GULOTTA, J. (concurring). The object of this proceeding pursuant to article 78 of the CPLR was to have it declared that the petitioner's property, at the southwest corner of Prospect Street and Central Avenue in the Village of Cedarhurst, had an established, lawful nonconforming use and that it could continue to be operated as an auto body repair and paint shop.

It is undisputed that for many years prior to 1950 the petitioner's predecessor in title operated a gasoline service and filling station at the premises, in conformity with the January, 1941 ordinance which had permitted such use. By virtue of an amendment adopted on July 28, 1950 a gasoline filling and service station at that location thereafter became a nonconforming use. In 1954 an addition to the existing building, containing three bays, was constructed. Bay No. 1 adjoined the gasoline station. Bays Nos. 2 and 3 extended to the west. There was a building permit issued for this work. Bay No. 1 was used in connection with the gasoline service business and the other two were rented in or about 1955 as an auto body repair and paint shop and they have been so operated ever since.

In 1957, after these new businesses had been in operation for almost three years, the ordinance was again amended in such a way as to enumerate the permitted uses rather than to list the forbidden ones. The petitioner's use was not listed. Thus, an auto body and paint shop became a prohibited use at this location *for the first time.* This is substantiated by the decision of the Board of Trustees, in its finding 13 which reads in part as follows: '' In November 1957 the Cedarhurst Ordinances were amended so as to prohibit auto body repair and paint shops in the Village of Cedarhurst.

'' This Board of Trustees, by the vote hereafter indicated, concludes that in July 1950 the pertinent ordinance was enacted prohibiting automobile filling and or automobile service stations having a frontage or property line on Central Avenue in Cedarhurst; that the subject premises had and has a frontage and property line on Central Avenue; and that the new addition erected in 1954 or 1955 was intended to be and was in fact an enlargement and extension of the then existing gas station.''

Further, the appellants' brief (p. 9) states:

'' It is important to note that on June 5, 1957 the Village Ordinance, section 18–154, listing permitted uses, was repealed and new legislation was enacted specifically enumerating the permitted uses in General Business Districts and prohibiting any and all others. This is not disputed and from that date on, June 5, 1957, auto repair and paint shops were not included as a permitted use and therefore prohibited.''

Some confusion arises from the fact that the certificate of occupancy, which was issued on April 21, 1955, purports to allow the extension of the gas station use unconditionally, but requires a special use permit for an auto body and paint shop. This certificate was erroneous on both counts. The Building Inspector had no authority to extend the gas station nonconforming use (see section 20 of the January, 1941 ordinance); nor did he have the right to require a special permit for a use which at that time was a permitted use. There is nothing in this record or the village ordinance which required such a special use permit.

We find the village Board of Trustees itself giving November, 1957 as the date of the significant amendment, the village counsel giving June 5, 1957 as the date, and the petitioner specifying it as September 16, 1957. Be that as it may, it is perfectly clear that prior to the amendment, whichever month it was, the auto body and paint shop use had been established for several years. It is obvious that an erroneous certificate of occupancy did not and could not invalidate a prior, valid building permit issued in accordance with the Building Code.

There is a clear distinction between a gasoline filling station and an auto repair and paint shop, as evidenced by the series of amendments made by the village itself which recognized the distinction. This practical construction by the village of its own ordinances settles any doubt as to the somewhat obscure meaning of the phrasing used.

We may concede that a person's rights may not be enlarged by a permit erroneously issued by a village official, but only the extension of the gasoline station use to the new building was illegal, not the building itself. All that is necessary to give full effect to these restrictions is to forbid the extension of the gas station use.

Bay No. 1 presents a problem because it could not be used legally as an extension of the gas station, which is the use it was actually put to from the time it was built. While it could have been used legally as an auto body and paint shop, or for many other automotive uses, no such use was established in it prior to 1957. However it would be manifestly unfair to sterilize its use completely after 17 years, because of errors contributed to in part by village officials, albeit in good faith.

I agree that Special Term was in error in concluding that a vested right may be acquired under an illegal permit, but it is an oversimplification if not an outright error to characterize this as an illegal building permit, since how a building is constructed and how it is used are two entirely separate matters.

The specification of the intended use of a building in a building permit is surplusage. Building permits are concerned with construction, not use. An owner is entitled to use a building for any lawful purpose within the zoning ordinances and his rights can neither be enlarged nor diminished by a declaration of the intended use in a building permit. It is the certificate of occupancy which controls the use and this may be changed any time the occasion demands it.

We would err on the side of unnecessary harshness were we to outlaw a use *in toto* which was perfectly legal in large part when it started, because part of it was illegal. This is especially so where that part is severable, as it clearly is in this case.

I therefore concur in the affirmance as to Bays Nos. 2 and 3 and dismissal of the proceeding as to the appellants insofar as it is with respect to Bay No. 1, without costs. Further as to Bay No. 1, I agree that it presents a special problem which may best be solved, as indicated in the opinion herewith by Acting Presiding Justice SHAPIRO, by granting a variance, if the petitioner be advised to apply for that relief.

BRENNAN, J. (dissenting). It is undisputed that for many years prior to 1950 the petitioner's predecessor in title operated a gasoline service and filling station in the building in question, which contained two bays and was in a business district in the Village of Cedarhurst. This was a pre-existing and permitted use under the Code of Ordinances of the Village of Cedarhurst enacted in January, 1941 (§ 50, subd. 1, par. [y]).

On July 28, 1950, the code was amended so as to repeal the 1941 enactment which had permitted automobile filling and service stations and to prohibit such stations having a frontage or property boundary line on Central Avenue.

In 1954 adjacent property was purchased and an application was made to construct a 75-foot by 40-foot addition, with three bays and two gasoline pumps, as an addition to the existing structure and for use as a gas station and for kindred facilities.

Although prohibited by the 1950 amendment, a building permit was issued; and a building containing three bays, together with two gasoline pumps, was constructed on the newly acquired property. The certificate of occupancy provided that the building was to be used for a gasoline station and accessory uses thereto; and further provided that a special application would be required for body and repair work, spray painting and any other use not incidental or accessory to a gasoline service station.

One bay in the new structure and the pumps were used in conjunction with the existing gas station; and the other two bays were used (eventually) as an auto body repair and painting shop. The special application and approval, as required by the certificate of occupancy, had not been obtained.

In my opinion, the petitioner failed to establish that it had a legal nonconforming right to operate an auto body repair and paint shop on the subject premises.

Section 50 of the Zoning Ordinance of the village, in effect in 1954 and 1955 (as certified by the Village Clerk), regulating uses in a business district, provided that "no building shall be erected, altered or used and no lot or premises shall be used except for one or more of the following purposes:" The section continued by enumerating various permitted uses, but not including a use as an automobile body repair and paint shop. Thus, at that time, the use of the new structure as an auto body repair and paint shop without prior approval of the village Board of Zoning Appeals was not a permitted use under the ordinance.

Supportive of the fact that use as an auto body repair and paint shop was not a permitted use under the ordinance in effect

at the time the application for a building permit was made is the previously mentioned inscription on the face of the certificate of occupancy.

In my view, there is a distinction to be made between the use of the structure as a gasoline filling station and the use as an automobile body repair and paint shop. Concededly, the gas station use was a valid pre-existing nonconforming use. However, use as an automobile body repair and paint shop enjoyed no such status. The legality of the latter use necessarily was to be determined independently by the provisions of the ordinance in effect at the time that use was commenced in 1954–55. As indicated, use as an auto body repair and paint shop was not a permitted use in 1954–55. That use, therefore, had no valid inception. Moreover, it never had acquired a valid nonconforming status as had the gas station use.

Nor can the use in question be recognized upon the theory that the auto body repair and paint shop use was an extension of the valid pre-existing nonconforming gas station use. This is so because, as already noted, the two uses are wholly dissimilar in scope.

. Even assuming, *arguendo,* that the proposed use was compatible with the pre-existing nonconforming use, which it was not, the use in controversy in any event must be deemed an invalid extension or enlargement of the pre-existing nonconforming gas station use. This could not be done without a variance. However, this issue is not before the court on the present appeal.

Additionally, it appears to be conceded that, by reason of the amendment of the ordinance in 1950, the granting of a building permit for the erection or enlargement or extension of the pre-existing automobile service station, was illegal and that no rights were acquired under the permit, which went beyond the provisions of the zoning ordinance (*Matter of Jahn* v. *Town of Patterson,* 23 A D 2d 688; *Matter of Jayne Estates* v. *Raynor,* 22 N Y 2d 417; *Marcus* v. *Village of Mamaroneck,* 283 N. Y. 325; *Matter of B & G Constr. Corp.* v. *Board of Appeals of Vil. of Amityville,* 309 N. Y. 730).

I do not agree with the finding of the Special Term '' that an auto body repair shop was a public garage and a permitted use in 1954–55.'' That finding is predicated upon a hypothesis not in conformity with the factual background of the proceeding.

For all of the reasons above set forth, it is my opinion that the judgment should be reversed insofar as appealed from and the proceeding dismissed as to the appellants.

48

Benjamin, J., concurs with Shapiro, Acting P. J.; Gulotta, J., concurs in an opinion; Brennan, J., dissents and votes to reverse the judgment insofar as appealed from and to dismiss the proceeding as to appellants, with an opinion, in which Christ, J., concurs.

Judgment of the Supreme Court, Nassau County, entered April 23, 1971, modified, on the law, by (1) limiting the annulment therein, of appellants' determination, to the two bays used for automobile repair purposes prior to the 1957 amendment to the Zoning Ordinance of the Village of Cedarhurst, (2) likewise limiting to those two bays the adjudication in the judgment granting the lawful nonconforming use status, and (3) adding a provision thereto dismissing the proceeding as to the appellants insofar as it is with respect to the bay which was used for gas station purposes. As so modified, judgment affirmed insofar as appealed from, without costs.